DIF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CARLOS ESTRONZA,

                                   Plaintiff,

          -against-

RJF SECURITY & INVESTIGATIONS,
ROBERT FOGLIA, JOSEPH FOGLIA,
LINDSAY PARK HOUSING CORP., and
CORA D. AUSTIN,

                                   Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-1444 (NGG) (JO)**

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ **NOV 1 1 2014** ★

**BROOKLYN OFFICE**

NICHOLAS G. GARAUFIS, United States District Judge.

      On May 31, 2013, Plaintiff Carlos Estronza filed his Second Amended Complaint ("SAC"), asserting claims of breach of contract, wrongful termination, retaliatory conduct, hostile work environment, and race and age discrimination against Defendants RJF Security & Investigations ("RJF"), Robert Foglia, and Joseph Foglia (collectively, "RJF Defendants"), and a claim of tortious interference with contract against Defendants Lindsay Park Housing Corp. ("LPHC") and Cora D. Austin (collectively, "LPH Defendants"). (SAC (Dkt. 33).) All Defendants moved to dismiss the SAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (LPH Defs.' Mot. to Dismiss ("Mot.") (Dkt. 35); RJF Defs.' Mot. to Dismiss ("Mot.") (Dkt. 41).) Plaintiff opposed Defendants' motions. (Opp'n to LPH Defs.' Mot. (Dkt. 39); Opp'n to RJF Defs.' Mot. (Dkt. 44).) The court referred the motions to Magistrate Judge James Orenstein for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Apr. 10, 2014, Order (Dkt. 46); Aug. 1, 2014, Order.)

      On August 27, 2014, Judge Orenstein issued an R&R recommending that the court deny RJF Defendants' motion to dismiss as to Plaintiff's race discrimination and hostile work

1

environment claims, but grant the motions in all other respects.[1]  (R&R (Dkt. 48) at 1, 20.)
Plaintiff submitted objections to the R&R ("Plaintiff's Objection") on September 30, 2014.[2]
(Pl.'s Obj. (Dkt. 51).)  Plaintiff raised two objections to the R&R, arguing that Judge Orenstein
(1) "misinterpreted the case law surrounding the contract of employment, absent a written
contract of employment," and (2) "improperly attributed lack of temporal proximity between
specified events in evaluating the sufficiency" of Plaintiff's tortious interference and retaliatory
conduct claims.  (Id. at 2.)  No other objections to the R&R were filed.  LPH Defendants filed a
response to Plaintiff's Objection on October 14, 2014.  (LPH Defs.' Resp. (Dkt. 53).)  For the
reasons explained below, Judge Orenstein's R&R is ADOPTED IN PART and MODIFIED IN
PART.

## I.    BACKGROUND

### A.    Procedural History

On February 17, 2012, Plaintiff Carlos Estronza filed a complaint (the "Initial
Complaint") in the Supreme Court of the State of New York, asserting breach of contract,
wrongful termination, retaliatory conduct, hostile work environment, race discrimination, and
age discrimination claims against RJF Defendants; a tortious interference with contract claim
against LPH Defendants; and a claim for punitive damages against all Defendants.  (Initial

---

[1]  As discussed below, see infra Part III.D.2, Judge Orenstein's R&R is unclear regarding the recommended
disposition of Plaintiff's age discrimination and hostile work environment claims.  (Compare R&R at 19-20
(concluding that dismissal was warranted on the merits), with id. at 13-15 (asserting that the court "can and should
deny" RJF Defendants' motion to dismiss these claims on grounds of affirmative waiver).)  As explained below, the
court determines that RJF Defendants' affirmative waiver warrants the denial of their motion as to Plaintiff's age
discrimination and hostile work environment claims, and exercises its discretion to modify Judge Orenstein's R&R
accordingly.  In other words, the court denies RJF Defendants' motion to dismiss as to Plaintiff's race and age
discrimination and hostile work environment claims, and grants Defendants' motions in all other respects.

[2]  Judge Orenstein had granted Plaintiff's request for an extension of time to file objections until September 29,
2014.  (Sept. 15, 2014, Order.)  Contemporaneously with Plaintiff's Objection, filed September 30, 2014, Plaintiff's
counsel submitted a letter in which he advised the court that Plaintiff's Objection had been finalized the prior day
but was not filed due to technical issues, and requested that the court accept the September 30, 2014, filing as
timely.  (Sept. 30, 2014, Ltr. (Dkt. 52).)  The court hereby accepts Plaintiff's Objection as timely filed.

Compl. (Not. of Removal (Dkt. 1), Ex. A).) On March 23, 2012, the LPH Defendants removed the action to federal court on the basis of federal question jurisdiction.[3] (Not. of Removal.) The LPH Defendants then moved to dismiss the claims asserted against them under Federal Rule of Civil Procedure 12(b)(6) (LPH First Mot. to Dismiss (Dkt. 8)), and the RJF Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (RJF Mot. for J. on the Pleadings (Dkt. 16)). Plaintiff opposed Defendants' motions. (Opp'n to LPH First Mot. to Dismiss (Dkt. 14); Opp'n to RJF Mot. for J. on the Pleadings (Dkt. 20).)

The court dismissed Plaintiff's breach of contract, wrongful termination, retaliatory conduct, and tortious interference with contract claims, and granted Plaintiff leave to amend the Initial Complaint to address the pleading deficiencies with respect to those claims. (Mar. 5, 2013, Order (Dkt. 23).) The court denied RJF Defendants' motion to dismiss Plaintiff's age and race discrimination and hostile work environment claims, on the grounds that RJF Defendants conceded in their reply that "Plaintiff has pled an adequate discrimination claim based upon age and national origin." (Id. at 6 (quoting RJF Reply in Supp. of Mot. for J. on the Pleadings (Dkt. 21) at 4) (internal quotation marks omitted).) Plaintiff conceded that New York law does not recognize an independent cause of action for punitive damages, and his claim for punitive damages was deemed withdrawn. (Id.)

Subsequently, Plaintiff filed a First Amended Complaint ("FAC") on April 3, 2013. (FAC (Dkt. 24).) LPH Defendants requested a pre-motion conference in anticipation of filing a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. for PMC (Dkt. 25).) After a pre-motion conference (see May 6, 2013, Min. Entry (Dkt. 26)) and a subsequent telephone conference with Judge Orenstein (see May 14, 2013, Min. Entry

---

[3] Plaintiff's Initial Complaint alleged, inter alia, that he was discriminated against on the basis of his age and race "in violation of the laws of the State of New York, and of the United States of America." (Initial Compl. ¶¶ 141, 149.) The SAC alleges the same. (SAC ¶¶ 160, 164.)

(Dkt. 28)), Plaintiff filed the SAC on May 31, 2013 with Defendants' consent, with the intention of adding factual allegations to address the alleged deficiencies in pleading. (See May 17, 2013, Ltr. Mot. to Stay Disc. (Dkt. 29); May 14, 2013, Min. Entry (Dkt. 28).)

### B.  Factual Allegations

In evaluating Defendants' motions to dismiss, the court accepts as true the following allegations from Plaintiff's SAC.[4]

Defendants Robert and Joseph Foglia are, respectively, the President and Vice President of RJF, a security firm. (R&R at 1.) Defendant Cora D. Austin is the Chairperson of the Board of LPHC, which engaged RJF to provide security services at its Mitchell-Lama housing cooperative. (Id.) Plaintiff, who is Hispanic, was hired by RJF in March 2007, when he was forty-four years old, as a licensed security guard. (Id. at 1-2; SAC ¶ 16.) Plaintiff earned $8.75 per hour when he was first hired by RJF, and earned $9.75 per hour at the time he was terminated in September 2011. (SAC ¶¶ 68-69.)

### 1.  Allegations Relating to Employment Relationship

Plaintiff did not sign a written employment contract with RJF. (R&R at 2.) When he was hired, RJF gave him a booklet entitled "RJF Security & Investigations Rules and Procedures" (the "Rules"), which included a section entitled "Grounds for Termination."[5] (Id.; SAC ¶¶ 18-20, 22; see also Rules at 4.) Plaintiff was required to "thoroughly review" the Rules and sign an acknowledgement that he had received the booklet. (R&R at 2; SAC ¶¶ 18-20.) When given the Rules, Plaintiff was told "that this booklet would be his conduct bible, and that he would never be fired as long as he followed its rules and procedures." (R&R at 2; SAC ¶ 21.)

---

[4]  Additional factual detail can be found in Judge Orenstein's R&R. (See R&R at 1-4.)

[5]  A copy of the Rules was attached to the SAC as Exhibit A thereto, although that exhibit appears not to have been electronically filed along with the SAC at Dkt. 33. A copy of the Rules is filed electronically on the case docket as Exhibit A to the Hardy Declaration (Dkt. 36-1, pages 20-27).

Based on that promise of job security conditioned on following the Rules, and RJF's promise to accommodate his need for a daytime schedule in order to care for his elderly mother in the evenings, Plaintiff resigned from his prior job, stopped seeking other employment, and began to work for RJF. (R&R at 2; SAC ¶¶ 24-31.)

### 2. Allegations Relating to Discrimination and Hostile Work Environment Claims

Joseph Foglia held "liquor, cocaine and sex filled parties" at the RJF office, which managers and staff members attended while on duty. (R&R at 2 (quoting SAC ¶ 33).) Joseph Foglia provided the liquor and cocaine for these parties. (SAC ¶ 34.) Plaintiff did not attend these parties. (R&R at 2.) Plaintiff "expressed concerns" about these parties to Joseph and Robert Foglia and Austin. (Id. (quoting SAC ¶¶ 41-42).)

Robert and Joseph Foglia have subjected Plaintiff to offensive and abusive treatment (see SAC ¶¶ 70-76), and Joseph Foglia has made the following specific remarks:

- "What kind of spic are you[?] . . . I thought all of you were the same" (R&R at 3 (quoting SAC ¶ 73));

- "Why can't you be more like Vasquez[?] . . . He always does what I want, and the spic knows he would not stick around long if he didn't play ball" (id. (quoting SAC ¶ 74)); and

- "Are you too old and can't get it up any more? This would mean that you cannot do your job properly around here" (id. (quoting SAC ¶ 75)).

Joseph Foglia also told other employees to "make that spic[']s life miserable." (Id. (quoting SAC ¶ 76).)

After Joseph Foglia took over responsibility for running RJF, "'only the Caucasian personnel . . . [were] promoted and given raises,'" and "only those security guards who regularly attended Joseph Foglia's parties were assigned overtime hours." (R&R at 3 (quoting SAC ¶ 77).) Plaintiff regularly volunteered for overtime work, but he was never assigned any. (R&R

at 2.) He was also never promoted, even though he was never found to have violated the Rules. (Id.)

Some employees were not disciplined despite conduct that subjected them to immediate suspension or termination under the Rules, such as sleeping on duty, being intoxicated on duty, and being arrested; one such individual regularly attended the parties hosted by Joseph Foglia. (R&R at 3; SAC ¶¶ 57-61.) Other employees were hired despite a lack of qualifications. (R&R at 3.)

### 3. Allegations Relating to Retaliation and Tortious Interference Claims

Plaintiff's fiancée filed a lawsuit against LPH Defendants in approximately October 2010, alleging discrimination against her disabled son. (R&R at 3.) Defendants incorrectly believed that Plaintiff had assisted his fiancée in gathering evidence for that lawsuit.[6] (Id.; SAC ¶¶ 80-81.) Shortly thereafter, Plaintiff was assigned to patrol a building "known to have problems with drug dealing and prostitution"—a building to which he had rarely been assigned previously—and employees of RJF who regularly attended Joseph Foglia's parties began to ignore Plaintiff. (R&R at 3; SAC ¶¶ 84-87.) Additionally, after the lawsuit was filed, Austin filed a complaint with RJF, claiming (incorrectly) that Plaintiff had not been on duty in his assigned building on an unspecified date, and shortly thereafter instructed Joseph Foglia to fire Plaintiff. (R&R at 3; SAC ¶¶ 88-92.) In August 2011, however, Joseph Foglia conducted a performance evaluation of Plaintiff, and Plaintiff received a perfect score of ten out of ten in each of seven performance categories. (R&R at 3.)

On September 19, 2011, a barbecue took place on LPHC property, and was attended by LPHC and RJF employees. (Id. at 4.) Plaintiff was not working that day, and he did not attend the barbecue. (Id.) Plaintiff's fiancée walked by the location where the barbecue was being

---

[6]  Plaintiff states that he did not assist his fiancée in this manner.  (R&R at 3; SAC ¶¶ 82-83.)

held, and an employee of LPHC named Marcello made an offensive sexual comment. (Id.; SAC ¶¶ 100-101.) When Plaintiff heard about this comment, he went to the barbecue, but Marcello was no longer there. (Id.) Plaintiff was attempting to locate another LPHC employee, one who had witnessed the event, when the police were called. (Id.) Unable to locate the witness, Plaintiff "simply, and quietly left the premises." (SAC ¶ 112.) He "never threatened," "confronted," or "yelled at anyone"; he "never became disorderly." (Id. ¶¶ 110-111.)

Plaintiff was on the public sidewalk when the police arrived. (R&R at 4.) While he was speaking with the police, RJF supervisor Gregory Nesmith approached, and informed the police that Plaintiff had been fired and was therefore no longer welcome on LPHC grounds because of his altercation with Marcello. (Id.; SAC ¶ 116.) The police determined that Plaintiff had not had an altercation with Marcello, and although RJF has since conceded that Plaintiff was not on duty the day of the barbecue, Nesmith told Plaintiff that he had been fired because of his insubordination that day. (R&R at 4; SAC ¶ 122.) On September 20, 2011, the following day, Nesmith warned Plaintiff to "watch his back," and that he would be "dealt with." (R&R at 4; SAC ¶¶ 123-23.) On September 23, 2011, LPHC sent Plaintiff a notice of eviction that falsely stated that he was illegally living with his fiancée in her LPHC unit and that he had created a disturbance, refused to leave the premises when requested, and threatened and attempted to physically assault LPHC employees on September 19, the date of the barbecue. (Id.; SAC ¶¶ 126-129.)

## II.    STANDARD OF REVIEW

In reviewing a magistrate judge's R&R, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court must make "a de novo determination of those portions of the report or

specified proposed findings or recommendations to which [timely] objection is made." Id. To obtain this de novo review, an objecting party "must point out the specific portions of the report and recommendation to which [that party] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). To adopt portions of the R&R to which no objections have been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Harris v. Queens Cnty. Dist. Attorney's Office, No. 08-CV-1703 (CBA), 2012 WL 832837, at *1 (E.D.N.Y. Mar. 12, 2012) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Standard on Motion to Dismiss

To the extent de novo review is required, "[t]o survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 664 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 555). In addition, in evaluating a motion to

dismiss, the court may consider the complaint and documents attached to, or integral to, the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

## B. Plaintiff's First Objection: Contract Formation

Plaintiff concedes that he was not employed by RJF pursuant to a written employment contract. (SAC ¶ 17; Opp'n to RJF Defs.' Mot. ¶ 21.[7]) Plaintiff argues, however, that an implied contract of employment of the type recognized by the New York Court of Appeals in Weiner v. McGraw-Hill, Inc., 443 N.E.2d 441 (N.Y. 1982),[8] was created by (1) the existence of the Rules, (2) RJF's having required Plaintiff to review the Rules and telling him that he "would never be fired as long as he followed them," and (3) Plaintiff's detrimental reliance on that promise of job security. (See Opp'n to RJF Defs.' Mot. ¶¶ 27-29; Pl.'s Obj. at 4-6.)

Judge Orenstein concluded that Plaintiff did not plead facts sufficient to fall within the Weiner exception to New York's strong presumption of at-will employment because he did not allege an express written limitation on RJF's right to terminate him; accordingly, he recommended that Plaintiff's breach of contract, wrongful termination, and tortious interference with contract claims be dismissed.[9] (See R&R at 7-9.) Plaintiff objects to this conclusion. He

---

[7] Plaintiff submitted the same papers in opposition to both motions (compare Opp'n to LPH Defs.' Mot. (Dkt. 39), with Opp'n to RJF Defs.' Mot. (Dkt. 44)), so the court will cite only to Plaintiff's Opposition to RJF Defendants' Motion.

[8] There is no dispute regarding the applicability of New York law to Plaintiff's state law claims.

[9] Any so-called "wrongful termination" claim would be co-extensive with a claim for breach of contract, as New York does not recognize a tort for wrongful termination of an at-will employee. Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 87 (N.Y. 1983); see also Horn v. N.Y. Times, 790 N.E.2d 753, 755-56 (N.Y. 2003) (discussing Murphy); Lobosco v. N.Y. Tel. Co./NYNEX, 751 N.E.2d 462, 464 (N.Y. 2001).

Additionally, "the keystone of the tort of interference with contractual relations is the existence of a contract." Dickstein v. Del Labs., Inc., 535 N.Y.S.2d 92, 94 (App. Div. 1988) (quoting Papell v. Calogero, 494 N.Y.S.2d 127, 129 (App. Div. 1985), aff'd as mod. on other grounds, 497 N.E.2d 676 (N.Y. 1986)) (internal quotation marks omitted). Though there is support in New York case law for an at-will employee's ability to plead a claim of tortious interference with employment or business relations, Plaintiff has not alleged such a claim, as explained in Judge Orenstein's R&R (see R&R at 10-11) and Part III.C, infra.

argues that Judge Orenstein "misinterpreted the case law surrounding the creation of a contract of employment, absent a written contract of employment." (Pl.'s Obj. at 4.) Specifically, Plaintiff contends that Judge Orenstein "place[d] entirely too much emphasis on the fact that [the Rules] failed to include language which specifically stated termination would only be for just cause, . . . when [Plaintiff] was told when he was hired that he would never be fired as long as he followed these Rules and Procedures." (Id.) Although LPHC Defendants argue otherwise (see LPH Defs.' Resp. at 4-6), the court will accept this objection as sufficiently specific to require de novo review.

In New York, there is a strong presumption that employment for indefinite duration is at will. Drake v. Delta Air Lines, Inc., No. 94-CV-5944 (FB), 1997 WL 397498, at *2 (E.D.N.Y. July 10, 1997); see also, e.g., Sabetay v. Sterling Drug, Inc., 506 N.E.2d 919, 920 (N.Y. 1987). The New York Court of Appeals has been reluctant to create exceptions to the employment-at-will doctrine, and has narrowly construed exceptions once created. See Horn v. N.Y. Times, 790 N.E.2d 753, 755 (N.Y. 2003); Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 89 (N.Y. 1983) ("Absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.").[10] The narrow limitation on the employment-at-will doctrine at issue here is the express contractual limitation exception set forth in Weiner v. McGraw-Hill, Inc., 443 N.E.2d 441 (N.Y. 1982), and its progeny.

In Weiner, reversing the dismissal below, the Court of Appeals held that an indefinite-duration employee had stated a cause of action for breach of contract when he pleaded facts

---

[10]   After Murphy, the New York Court of Appeals affirmed an additional exception to the employment-at-will doctrine in Weider v. Skala, 609 N.E.2d 105 (N.Y. 1992), one which the same court has since declined to extend. See Sullivan v. Harnisch, 969 N.Y.2d 758, 760-61 (N.Y. 2012); Horn, 790 N.E.2d at 758-59. The Weider exception, which is inapplicable here, recognized an implied-in-law agreement between a law firm and its associate to conduct the practice of law in accordance with the profession's ethical standards. 609 N.E.2d at 108-10.

sufficient to find that the employer had expressly limited its right to terminate the plaintiff for any reason or no reason. Weiner, 443 N.E.2d at 443, 445-46. Specifically, the court concluded that language in an employment manual stating that "[t]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee had been taken and failed," combined with a reference to the manual in the plaintiff's employment application, constituted an express agreement between the parties that limited the employer's right to terminate the employee. Id. at 442. The Court of Appeals noted that four factors had led to its determination that the employment manual and application created this implied contract: (1) "[P]laintiff was induced to leave [his former employer] with the assurance that [the defendant-employer] would not discharge him without cause"; (2) "this assurance was incorporated into the employment application"; (3) "plaintiff rejected other offers of employment in reliance on the assurance"; and (4) plaintiff's supervisors had directed him to treat his subordinates "in strict compliance with the handbook and policy manuals because employees could be discharged only for just cause." Id. at 445; see also Sabetay, 506 N.E.2d at 921-22 (noting "significan[ce]" of Weiner factors and finding policy statement not actionable absent expressly limiting language and satisfaction of other Weiner factors).

Plaintiff is correct that some federal case law indicates that these four factors are not the only way a plaintiff may plead the existence of an agreement that expressly limits the employer's right to terminate, and that a court should consider the totality of facts and circumstances in determining whether to grant a motion to dismiss. See Gorrill v. Icelandair/Flugleidir, 761 F.2d 847, 852-53 (2d Cir. 1985); Gmora v. State Farm Mut. Auto. Ins. Co., 709 F. Supp. 337, 340 (E.D.N.Y.), aff'd, 888 F.2d 1376 (2d Cir. 1989).[11] However, to state a claim for an implied

---

[11] See also O'Neill v. N.Y. Univ., 944 N.Y.S.2d 503, 512 (App. Div. 2012) ("[T]his court has previously noted that 'Weiner should not be interpreted as limiting its holding to its specific facts, especially in light of the court's

contract on the basis of an employment manual, an express written limitation of the employer's right to terminate the plaintiff-employee for any reason or no reason at all must be present in that manual. See Lobosco v. N.Y. Tel. Co./NYNEX, 751 N.E.2d 462, 465 (N.Y. 2001) ("Central to the Weiner analysis was the written proviso, in the employee manual, that employees would not be terminated without just and sufficient cause.").

The critical impediment to Plaintiff's claim is that the Rules do not contain an express written policy limiting RJF's right to terminate an employee. Plaintiff maintains that the Rules do contain such a written policy; he appears to contend that Judge Orenstein erred in not recognizing that an express limitation on the right to terminate need not use the specific words "just cause" or "sufficient cause." (See Pl.'s Obj. at 4-6.)[12] But the obstacle here is not that the Rules do not contain the precise words "just cause" or "good cause." Rather, Plaintiff's claims fail because there is no express limitation in the Rules by any formulation. The enumeration of certain grounds for termination in the Rules does not constitute a promise by RJF that it will terminate an employee solely for these reasons. Numerous New York cases hold that enumerated grounds for termination do not amount to such an express limitation. E.g., Sabetay v. Sterling Drug, Inc., 506 N.E.2d 919, 920 (N.Y. 1987) (rejecting plaintiff's argument that

---

formulation of a 'totality of the circumstances' test.") (citations omitted). But see Dooley v. Metro. Jewish Health Sys., No. 02-CV-4640 (JG), 2003 WL 22171876, at *5 (E.D.N.Y. July 30, 2003) (noting that subsequent decisions by the New York Court of Appeals "have confirmed that it was the confluence of [the four] 'cumulative factors' and the presence of an 'express written policy' that allowed Weiner to proceed to trial on his breach of contract claim").

Notably, it is also the law of New York and the Second Circuit that "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." Lobosco v. N.Y. Tel. Co./NYNEX, 751 N.E.2d 462, 465 (N.Y. 2001); Baron v. Port Auth. of N.Y. and N.J., 271 F.3d 81, 85 (2d Cir. 2001) (quoting Lobosco).

[12] In support of this position, Plaintiff notes that the Second Circuit found in Gorrill v. Icelandair/Flugleidir, 761 F.2d 847 (2d Cir. 1985), that an operations manual stating that "seniority will be the sole factor for determining demotions, transfers and termination" amounted to an express limitation of the employer's right to terminate. (Pl.'s Obj. at 6 (quoting Gorrill, 761 F.2d at 850).) Notably, however, the quoted language at issue in Gorrill did specifically and expressly limit the employer's right to terminate, by the inclusion of the word "sole." The Second Circuit held that under the totality of the circumstances, the employer should be bound by the clear language of the manual. Gorrill, 761 F.2d at 852-53. No such express limitation can be found in the Rules.

"personnel manual, which enumerates seven grounds for termination, establishes an implied promise that those are the only grounds for termination"); Bartenbach v. Bd. of Trs. of Nassau Library Sys., 657 N.Y.S.2d 200, 201 (App. Div. 1997) (personnel manual "enumerated several reasons for dismissal" but "did not, however, limit the defendants' right to discharge an employee at will to just and sufficient cause only"); Novinger v. Eden Park Health Servs., Inc., 563 N.Y.S.2d 219, 220-21 (App. Div. 1990) ("The grounds for termination are not exhaustive . . . . Plaintiff's failure to establish an express limitation on defendants' right to discharge her is fatal to her case."); Dickstein v. Del Labs., Inc., 535 N.Y.S.2d 92, 93-94 (App. Div. 1988) ("The personnel policy memorandum . . . , while enumerating 12 reasons for an employee's dismissal, does not limit the appellants' right to discharge to just and sufficient cause only. Thus, the plaintiff's employment could have been terminated at will and, accordingly, her cause of action . . . should have been dismissed."); see also Baron v. Port Auth. of N.Y. and N.J., 271 F.3d 81, 85 (2d Cir. 2001) (acknowledging the duty of the federal courts in this circuit to "eliminate [any] divergence" between the New York state and federal courts' application of New York's employment-at-will doctrine).[13]

---

[13]  See also Gmora v. State Farm Mut. Auto. Ins. Co., 709 F. Supp. 337, 341 (E.D.N.Y.) ("The mere reference to certain grounds for termination does not translate into a finding that employees will be terminated for good cause only or in any way set forth an express limitation on State Farm's right to terminate its at-will employees.") (emphasis in original), aff'd, 888 F.2d 1376 (2d Cir. 1989); Cucchi v. N.Y.C. Off-Track Betting Corp., 818 F. Supp. 647, 650 (S.D.N.Y. 1993) (finding that language in employment manual listing "four types of separation (resignation, discharge for cause, layoff and retirement) . . . as a matter of law cannot be construed as excluding other grounds for termination because it does not expressly do so"); McPherson v. U.S. Clearing Corp., 625 N.Y.S.2d 22, 22 (App. Div. 1995) (the limitation set forth in the employment manual must be express; limitation by inference is not sufficient); Jagust v. Brookhaven Mem'l Ass'n Inc., 541 N.Y.S.2d 41, 42 (App. Div. 1989) ("[N]either the handbook nor the manual states that an employee will be discharged only for cause. The failure of these documents to limit the Hospital's right to discharge the plaintiff only for just cause is fatal to the plaintiff's claim.") (emphasis in original); Marvin v. Kent Nursing Home, 544 N.Y.S.2d 210, 211-12 (App. Div. 1989) ("While the Policy and Procedures Manual and the disciplinary procedures list grounds for termination and procedures for discipline, they do not state that termination is limited to the grounds stated or that the disciplinary procedures will be followed in all cases. . . . This failure to establish an express limitation on [defendant's] right to discharge the plaintiff at will is fatal to the plaintiff's case.").

The only New York case that the court has identified in support of the proposition that a limitation could be implied by less-than-explicit language, Tirrano v. Sears, Roebuck and Co., 472 N.Y.S.2d 49, 50 (App. Div. 4th Dep't 1984),

Moreover, even if enumerated grounds for termination might, in an appropriate context, be construed as an express promise not to terminate absent one of the enumerated grounds, the "Grounds for Termination" section of the Rules could not be so construed. The "Grounds for Termination" section of the Rules provides that employees will be terminated for (1) sleeping on post; (2) abandonment of post; (3) failure to call in advance and failure to show for work; (4) drunk or disorderly conduct; or (5) being arrested. (See Opp'n to RJF Defs.' Mot. ¶ 24; Rules at 4.) At face value, this section is not sufficiently thorough or exhaustive such that it would be reasonable to construe as expressing a promise by RJF that employees would not be terminated for any other reason. (See Rules at 4.)

And as explained in Plaintiff's own opposition and objection papers, other sections of the Rules refer to additional grounds for termination, for example: (1) excessive sick days or personal time without documented explanation (see Opp'n to RJF Defs.' Mot. ¶ 25(a); Pl.'s Obj. at 5; Rules at 2); (2) an employee's family member(s) or friend(s) loitering in the lobby with the employee (see Opp'n to RJF Defs.' Mot. ¶ 25(b); Pl.'s Obj. at 5; Rules at 4); and (3) aiding residents in illegal activities (see Opp'n to RJF Defs.' Mot. ¶ 25(c); Pl.'s Obj. at 5; Rules at 7). Plaintiff also appears to construe the Rules as providing that an employee may be terminated for administering first aid when not certified, although the only provision in the Rules addressing first aid does not specifically mention termination. (Compare Pl.'s Obj. at 5, with Rules at 4.) Ultimately, even if the case law did not strongly support the conclusion that enumeration of certain grounds for termination is, as a rule, insufficient to limit the employer's right to terminate

has since been implicitly repudiated by that court, Collins v. Hoselton Datsun, Inc., 503 N.Y.S.2d 203, 204 (App. Div. 4th Dep't 1986), as recognized by the Second Circuit and other courts. See Wright v. Cayan, 817 F.2d 999, 1005 (2d Cir. 1987); Melnyk v. Adria Labs., 799 F. Supp. 301, 309 & n.1 (W.D.N.Y. 1992); see also Harrison v. Sears, Roebuck & Co., 546 N.E.2d 248, 254 (Ill. App. Ct. 1989).

for any or no reason, the enumerations at issue here could not plausibly be construed to constitute such an express limitation.

Absent an express written limitation on RJF's right to terminate Plaintiff at will, his claim can only proceed if an oral promise that he would not be terminated so long as he followed the Rules can itself create an implied contract of employment. Plaintiff argues that "being made to review a manual that contains a fairly extensive list of grounds for termination, combined with the oral assurance that you will not be fired as long as you follow these rules is the same as being promised, both orally and in writing, that your employment will only be terminated for just cause." (Pl.'s Obj. at 5-6.) But under New York law, these are not the same, and the oral promise alleged by Plaintiff is not sufficient to turn the non-exclusive enumerations in the Rules into a binding employment contract. See Soto v. Fed. Exp. Corp., No. 06-CV-5413 (SLT), 2008 WL 305017, at *6 (E.D.N.Y. Feb. 1, 2008) ("Plaintiff's reliance on alleged oral assurances of continued employment does not create a contractual limitation because oral assurances of employment only support an express written limitation but do not in and of themselves create such a limitation."); Fieldhouse v. Stamford Hosp. Soc'y Inc., 649 N.Y.S.2d 527, 528 (App. Div. 1996) ("Moreover, the fact that plaintiff alleges that she was given oral assurances that the employee manual would apply to her and that her employment was secure does not raise a triable question of fact in this matter."); Preston v. Champion Home Builders, 589 N.Y.S.2d 940, 941-42 (App. Div. 1992) ("Plaintiff asserts that defendant's oral assurance that he would be covered by the manual, coupled with the written policy set forth therein, constituted an implied contract of employment . . . . Notably, for a manual . . . to meet the requirements of Weiner . . . , it must contain an express limitation on the employer's right to terminate at will.") (citations omitted); Diskin v. Consol. Edison Co. of N.Y., Inc., 522 N.Y.S.2d 888, 890 (App. Div. 1987) (oral

15

assurances that employee could only be discharged for cause did not limit employer's right to terminate employees at will where the written employment manual contained no express limitation on the employer's right to do so).[14]

On the basis of this precedent, the court comes to the same conclusion as did Judge Orenstein: Plaintiff was an at-will employee, and RJF was not bound by any employment contract regarding Plaintiff. Therefore, Plaintiff's objection is overruled, this portion of the R&R is adopted, and Plaintiff's breach of contract, wrongful termination, and tortious interference with contract claims are dismissed.

### C.   Plaintiff's Second Objection: Temporality

While finding that no employment contract bound RJF and thus no tortious interference with contract claim could lie (see R&R at 9-10), Judge Orenstein recognized support in New

---

[14] See also Hemraj v. Fed. Exp. Corp., No. 06-CV-5414 (CBA), 2007 WL 3124553, at *5 (E.D.N.Y. Oct. 25, 2007) ("[O]ral assurances do not create a limitation on an at will employer's right of termination absent additional evidence that an employee had a contractual relationship with an employer."); Dooley v. Metro. Jewish Health Sys., No. 02-CV-4640 (JG), 2003 WL 22171876, at *5-6 (E.D.N.Y. July 30, 2003) (distinguishing cases cited by plaintiff as "all involv[ing] oral representations confirming express, written representations contained in an employer's employment manuals or personnel handbooks"); Cucchi v. N.Y.C. Off-Track Betting Corp., 818 F. Supp. 647, 651-52 (S.D.N.Y. 1993) (while an "employer's oral assurances only to fire an employee for just cause are a significant factor a court must take into consideration in determining whether the employer intended to alter the employee's at-will status, [such] oral assurances . . . are not by themselves sufficient evidence of an express agreement to alter the employee's at-will status"); Leahy v. Fed. Exp. Corp., 609 F. Supp. 668, 672 (E.D.N.Y. 1985) ("[E]ven an oral representation that employees could not be fired without just cause, do not satisfy the panoply of requirements set forth in Weiner."); Fitzgerald v. Martin-Marietta, 681 N.Y.S.2d 895, 897 (App. Div. 1998) (finding that employment manual did not set express limitation on employer's right to terminate and that "oral assurances alleged by plaintiff cannot of themselves give rise to a triable question of fact"); Paolucci v. Adult Retardates Ctr., Inc., 582 N.Y.S.2d 452, 453 (App. Div. 1992) ("Neither oral assurances made to the plaintiff nor a general provision in an employee manual were sufficient to limit the defendant's right to discharge the plaintiff at any time, for any reason."); Patrowich v. Chem. Bank, 470 N.Y.S.2d 599, 601-03 (App. Div. 1984) (finding no contract where employment manual contained no "express limitation relating to job tenure" though plaintiff alleged an oral promise by employer to abide by the manual).

To the extent that Ohanian v. Avis Rent A Car System, Inc., 779 F.2d 101 (2d Cir. 1985), might be construed to suggest that an oral promise not to terminate without just cause would constitute an enforceable employment contract under New York law, several courts have held that Ohanian has been undercut by subsequent New York case law, specifically by the Court of Appeals's decision in Sabetay v. Sterling Drug, Inc., 506 N.E.2d 919 (N.Y. 1987), and by subsequent decisions of the Appellate Division, and therefore should not be relied upon. E.g., Kempf v. Mitsui Plastics, Inc., No. 96-CV-1106 (HB), 1996 WL 673812, at *6 (S.D.N.Y. Nov. 20, 1996); Wanamaker v. Columbian Rope Co., 907 F. Supp. 522, 539-40 (N.D.N.Y. 1995); Cucchi, 818 F. Supp. at 650; see also Burke v. Bevona, 866 F.2d 532 (2d Cir. 1989).

York law for the ability of an at-will employee to assert a cause of action for tortious interference with employment or business relations (see id. at 10). With respect both to this type of tortious interference claim and to Plaintiff's federal and state retaliatory conduct causes of action, Judge Orenstein found that Plaintiff failed to sufficiently allege a causal connection between Plaintiff's termination and Defendants' allegedly unlawful conduct or Plaintiff's allegedly protected activity. Accordingly, Judge Orenstein recommended that the court grant Defendants' motions to dismiss with respect to these claims. (Id. at 10-13.)

Plaintiff does not argue that Judge Orenstein was incorrect in finding causation to be a required element of these causes of action, and this was not clearly erroneous.[15] Plaintiff specifically objects to the finding that causation was lacking, arguing that Judge Orenstein "improperly attributed lack of temporal proximity between specified events in evaluating the sufficiency" of these claims. (Pl.'s Obj. at 7.) Plaintiff's argument cites no authority for this proposition (see id.), and the bulk of the objection unsuccessfully attempts to recharacterize the timing of events as set forth in the SAC.

First, the court rejects Plaintiff's attempt to recharacterize the sequence of events set forth in the SAC. Plaintiff's objection (1) advocates for a reading of the SAC in which the sequence

---

[15] See, e.g., McHenry v. Lawrence, 886 N.Y.S.2d 492, 494 (App. Div. 2009) (an at-will employee asserting tortious interference with employment must show "(1) the existence of a business relationship between the plaintiff and a third party; (2) the defendants' interference with that business relationship; (3) that the defendants acted with the sole purpose of harming plaintiff or used dishonest, unfair, improper or illegal means that amounted to a crime or an independent tort; and (4) that such acts resulted in [plaintiff's termination]") (quoting Schorr v. Guardian Life Ins. Co. of Am., 843 N.Y.S.2d 24, 28 (App. Div. 2007) (internal quotation marks omitted); St. Juste v. Metro Plus Health Plan, No. 10-CV-4729 (MKB), --- F. Supp. 2d ---, 2014 WL 1266306, at *25 (E.D.N.Y. Mar. 28, 2014) ("In order to establish a prima facie case of retaliation [under federal or New York state law], a plaintiff must establish '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity.'") (quoting Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (per curiam)); see also Dimitracopoulos v. City of N.Y., No. 14-CV-674 (JBW), --- F. Supp. 2d ---, 2014 WL 2547586, at *13 (E.D.N.Y. June 2, 2014) (elements of retaliation claim under New York City Human Rights Law are the same except that employer's actions "need not be 'materially adverse' to the plaintiff, but merely 'reasonably likely to deter a person from engaging in protected activity'") (quoting N.Y.C. Admin. Code § 8-107(7)).

and timing of certain events are unclear, and (2) adds a temporal assertion that is not found in the SAC. (See Pl.'s Obj. at 7 ("It must be pointed out that the[re] is no specific ti[m]e reference to this statement from Cora Austin to Joseph Foglia, because the allegations state that Cora Austin complained to RJF that Mr. Estronza was not on duty 'sometime after' the Padilla lawsuit was filed."); id. ("Cora Austin directed Joseph Foglia to fire Mr. Estronza shortly after it was proven that her claim that Mr. Estronza was not on duty was disproved by videotape evidence.").) However, the chronology of events as set forth in the portion of the SAC at issue here is clear: (1) In October 2010, Plaintiff's fiancée filed her lawsuit; (2) almost immediately, Plaintiff was assigned to an undesirable building and some of Plaintiff's co-workers began to ignore him; (3) next, Austin filed a complaint with RJF, falsely stating that Plaintiff had not been on duty in his assigned building; (4) soon thereafter, Austin directed Joseph Foglia to fire Plaintiff; (5) later, in approximately August 2011, Joseph Foglia gave Plaintiff a perfect performance evaluation; and (6) finally, on September 19, 2011, the day of the barbecue, Plaintiff's employment was terminated. (See SAC ¶¶ 79-129.) Additionally, nothing in the SAC suggests that Austin directed Joseph Foglia to terminate Plaintiff's employment after, or as a result of, viewing security tapes that showed that Plaintiff had in fact been on duty in his assigned building, or that Austin even viewed those tapes at all. Instead, the allegation in the SAC that security tapes proved Austin's complaint about Plaintiff to be unfounded appears to be included simply to indicate that Austin's assertion that Plaintiff had not been on duty was false, and perhaps an intentional lie. (See SAC ¶¶ 88, 91-92.) Thus, Plaintiff's proposed interpretation is strained, and conflicts with a natural reading of the SAC.

Second, to the extent that Plaintiff contends that the temporal proximity or remoteness of Plaintiff's termination to the allegedly wrongful interference with his employment (with respect

to Plaintiff's tortious interference claim) or to the allegedly protected activity (with respect to his retaliation claim) should not be considered, the objection is overruled. See, e.g., Dayes v. Pace Univ., 2 F. App'x 204, 208 (2d Cir. 2001) (summary order) (finding that lapse of seven months between employee's filing of complaint and negative review defeated attempt to establish causal connection between the two events); Myrick v. N.Y.C. Emps. Ret. Sys., No. 99-CV-4308, 2002 WL 868469, at *7 (S.D.N.Y. May 3, 2002) (Lynch, J.) (noting that temporal proximity between protected activity and adverse employment action may support an inference of causation on a motion to dismiss), aff'd, 56 F. App'x 70 (2d Cir. 2003).[16]

Finally, to the extent that Plaintiff argues that Judge Orenstein's analysis simply placed too much weight on temporal remoteness, disregarding allegations that might support an inference of causation, this is also overruled. It is clear from the R&R that Judge Orenstein's analysis did not depend solely, or even primarily, on the remoteness of the events. Instead, Judge Orenstein considered temporality, intervening occurrences, and generally whether the alleged unlawful conduct or protected activity may have plausibly caused Plaintiff's termination in light of the story told by the SAC, as a matter of "but for" causation. (See R&R at 10-13; see also id. at 11 (citing tortious interference case requiring "but for" causation).) See also Sass v. MTA Bus Co., No. 10-CV-4079 (MKB), --- F. Supp. 2d ---, 2014 WL 3818663, at *4-6 (E.D.N.Y. Aug. 4, 2014) (with respect to retaliation claims under federal and New York state law, causation must be proved according to traditional "but for" principles). Notably, the two allegations in the SAC that are the most fatal to these claims are relatively unrelated to the

---

[16] See also Dimitracopoulos v. City of N.Y., No. 14-CV-674 (JBW), --- F. Supp. 2d ---, 2014 WL 2547586, at *13 (E.D.N.Y. June 2, 2014) (finding that plaintiff did not state plausible claim for retaliation under federal, state, or city law in part due to lack of "temporal proximity between the 2009 lawsuit and the alleged adverse actions first suffered by plaintiff in June 2012"); Harrison v. N. Shore Univ. Hosp., No. 04-CV-2033 (WDW), 2008 WL 656674, at *12 (E.D.N.Y. Mar. 6, 2008) (noting that "[w]hile there is no bright line marker, case law indicates that a gap of up to one to two months between the protected activity and the adverse action may establish the requisite causal connection" and that "[l]onger gaps . . . have been found to be too attenuated").

temporal remoteness of Plaintiff's eventual termination to the filing of Plaintiff's fiancée's lawsuit and to Austin's alleged direction to RJF to terminate Plaintiff.

First, as Judge Orenstein recognized, after both of these alleged occurrences, Plaintiff received a perfect performance evaluation from RJF, scoring a grade of ten out of ten on each of seven performance categories.  (SAC ¶ 93.)  The fact that neither the filing of the lawsuit nor Austin's alleged directive to Joseph Foglia caused Foglia to give Plaintiff a less-than-perfect evaluation negates any inference that either of these events caused his termination a month later. Second, the SAC provides an exceedingly plausible alternative cause of Plaintiff's termination— the conflict that occurred during the September 19, 2011, barbecue—which prevents the court from concluding that the SAC states a plausible causal relationship between the necessary events.  (See id. ¶¶ 94-119.)  See Amarsingh v. JetBlue Airways Corp., 409 F. App'x 459, 461 (2d Cir. 2011) (summary order) (finding that employee's altercation with customer shortly before termination was likely cause thereof, precluding an inference that termination was caused by other, protected activities); Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) (granting summary judgment and dismissing retaliation case where "a reasonable fact-finder could only conclude that there were substantial intervening events between the [protected] January complaint and both the April suspension and the June discharge"); see also Savage v. Galaxy Media & Mktg. Corp., No. 11-CV-6791 (NRB), 2012 WL 2681423, at *9 (S.D.N.Y. July 5, 2012) (holding that where plaintiff concedes reason for breach of contract other than the alleged tortious interference, but-for causation cannot be established).  Accordingly, for substantially the same reasons set forth in Judge Orenstein's R&R, the court finds that Plaintiff has insufficiently alleged causation with respect to his tortious

interference with employment or business relations and retaliatory conduct causes of action. The court therefore adopts this portion of the R&R, and these claims are dismissed.

### D. Discrimination and Hostile Work Environment Claims

#### 1. Race-Based Claims

The RJF Defendants did not object to Judge Orenstein's recommendation that Plaintiff's race discrimination and hostile work environment claims proceed, and the court finds no clear error in this recommendation. Therefore, the R&R is adopted with respect to the analysis and disposition thereof, and the RJF Defendants' motion to dismiss as to these claims is denied.

#### 2. Age-Based Claims

Although no objection has been raised thereto, the court finds Judge Orenstein's R&R unclear with respect to the recommended disposition of Plaintiff's age discrimination and hostile work environment claims. The ultimate recommendation appears to propose that these claims be dismissed. (See R&R at 1, 20.) However, in the body of the R&R, Judge Orenstein concluded that the court "can and should deny" RJF Defendants' motion to dismiss as to Plaintiff's age discrimination and hostile work environment claims on the grounds that RJF Defendants affirmatively waived their right to seek dismissal of these claims. (Id. at 13-15.) Judge Orenstein then went on to conclude that dismissal of the age discrimination and hostile work environment claims was warranted on the merits. (Id. at 19-20.) In making his ultimate recommendation, Judge Orenstein did not address his affirmative waiver finding (see id. at 20); indeed, nowhere in the R&R did he explain why that waiver should not be dispositive of the outcome. The court hereby exercises its discretion to modify this portion of the R&R.[17]

---

[17] The court need not determine whether this lack of clarity constitutes clear error.

As Judge Orenstein explained, when litigating their Motion for Judgment on the

Pleadings, RJF Defendants argued at first that Plaintiff's Initial Complaint should be dismissed

in its entirety. (See RJF Mem. in Supp. of Mot. for J. on the Pleadings (Dkt. 18) at 14.) In their

reply, however, they conceded that "Plaintiff has pled an adequate discrimination claim based

upon age and national origin." (RJF Reply in Supp. of Mot. for J. on the Pleadings at 4.) On this

basis, the court denied their motion as to these claims (see Mar. 5, 2013, Order at 4), which RJF

Defendants acknowledge in their reply to the instant motion. (See RJF Reply (Dkt. 45) at 3

(acknowledging that "the denial of the prior motion was occasioned by Defendants' voluntary

abandonment of its pursuit to dismiss the discrimination causes of action").) Furthermore, RJF

Defendants again affirmatively conceded the viability of Plaintiff's age and race discrimination

and hostile work environment claims in a conference before Judge Orenstein, after the filing of

Plaintiff's FAC and in anticipation of the filing of the SAC and the motions to dismiss that are

the subject of this Memorandum and Order; and they expressed no intention to move to dismiss

with respect to those claims. (Tr. of May 6, 2013, PMC (Dkt. 47) at 17:2-13.)

Indeed, Judge Orenstein found that RJF Defendants knowingly waived their right to seek

Rule 12(b)(6) dismissal of any of Plaintiff's discrimination and hostile work environment claims

through this series of affirmative concessions. (R&R at 14-15.) The court finds Judge

Orenstein's discussion of RJF Defendants' affirmative waiver to be persuasive,[18] and adopts

solely this portion of the R&R (id.) with respect to Plaintiff's age discrimination and hostile

work environment claims. In light of the court's March 5, 2013, Order, and RJF Defendants'

concessions, both before and after the entry of that Order, Plaintiff had no reason to add

additional factual allegations in support of these claims when amending his Initial Complaint

---

[18] See R&R at 14 (distinguishing affirmative defenses from a pleading's facial inadequacy); id. at 15 (distinguishing affirmative waiver of a known right from mere forfeiture).

and/or FAC. Therefore, it would be patently unfair to dismiss Plaintiff's age-based claims at this

point, especially after RJF Defendants' repeated concessions. The court accordingly modifies

the R&R with respect to Judge Orenstein's discussion of the merits of and ultimate

recommendation as to Plaintiff's age discrimination claims, and denies RJF Defendants' motion

to dismiss with respect to these claims. If the evidence obtained in discovery does not

sufficiently support these claims, RJF Defendants may again seek to dispose of them on a motion

for summary judgment.[19]

## IV.   CONCLUSION

For the reasons discussed above, the court OVERRULES Plaintiff's objections to Judge

Orenstein's R&R. The court ADOPTS IN PART and MODIFIES IN PART the R&R. Thus,

RJF Defendants' motion to dismiss is DENIED with respect to Plaintiff's race and age

discrimination and hostile work environment claims, and Plaintiff's other claims are

DISMISSED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      November 11, 2014

NICHOLAS G. GARAUFIS
United States District Judge

---

[19] As to all portions of the R&R not specifically addressed in Parts III.B-D, supra, the court finds no clear error and adopts them accordingly.

23